**STATE of Alaska, Petitioner,**

v.

**Nicholas Z. RASTOPSOFF, Respondent.**

**No. 6295.**

Court of Appeals of Alaska.

March 4, 1983.

David Mannheimer, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for petitioner.

Joel H. Bolger, Asst. Public Defender, Barrow, and Dana Fabe, Public Defender, Anchorage, for respondent.

## OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

BRYNER, Chief Judge.

In this case the State of Alaska seeks review of an order entered by the superior court's three-judge sentencing panel holding that Alaska's presumptive sentencing statutes are unconstitutional as applied to respondent, Nicholas Z. Rastopsoff. We have granted review because the three-judge sentencing panel's ruling involves a significant question of law as to which a substantial ground for difference of opinion exists, and because immediate review will advance an important public interest. *See* Alaska R.App.P. 402(b)(2).

During the summer of 1980, Nicholas Rastopsoff engaged in three separate episodes of criminal misconduct: On June 4, 1980, he committed a forgery; on August 26, 1980, he burglarized a trailer and robbed its occupant of some traveler's checks and some coins; on September 13, 1980, he burglarized a house and threatened its occupant with a knife. For the June 4 offense

the state charged Rastopsoff with forgery in the second degree, a class C felony; for the August 26 incident he was charged with burglary in the first degree and robbery in the second degree, both class B felonies; for the September 13 incident he was charged with assault in the third degree, a class C felony, and burglary in the first degree.

On October 27, 1980, after being indicted for all five offenses, Rastopsoff pled guilty to the June 4 forgery. He was sentenced to two years in jail, with one and one-half years suspended. This was Rastopsoff's first felony conviction. On February 24, 1981, Rastopsoff pled *nolo contendere* to the charges involving the offenses of August 26 and September 13, 1980. Superior Court Judge Roy H. Madsen ruled that, because of Rastopsoff's conviction for the June 4 forgery, the presumptive sentencing provisions of the Alaska statutes applied to him. Judge Madsen ruled that, for purposes of presumptive sentencing, the charges stemming from Rastopsoff's August 26 offenses should be treated as second felony convictions and charges from the September 13 offenses should be treated as third felony convictions. Nevertheless, Judge Madsen found that imposition of presumptive second and third offense sentences was uncalled for and would result in manifest injustice. Because he could find no specific mitigating circumstances applicable to Rastopsoff, Judge Madsen referred this case to the superior court's three-judge sentencing panel in accordance with AS 12.55.165 and 12.55.175.

Like Judge Madsen, the three-judge panel interpreted the presumptive sentencing statutes to apply to Rastopsoff's case, holding that it was required to consider the August 26 offenses as second felony convictions and the September 13 crimes as third felony convictions, even though Rastopsoff had committed all of his offenses before any charges had been filed against him. However, the panel ruled that the presumptive sentencing statutes, as applied to Rastopsoff's case, violated the equal protection clause of the Alaska Constitution. The panel held, in pertinent part:

[T]he purpose of the statutory scheme in question is to deter offenders from further violations of the law by means of presumptive sentencing provisions which incorporate aspects of both reformation and vindication. The crux of the issue at hand is whether it is a violation of the equal protection clause to allow the opportunity of reformation only to those offenders who commit crimes at a pace slow enough to be convicted of each crime before the next one is committed, while denying the opportunity of reformation to others who may commit two or more crimes at a pace so rapid ... that the prosecutor cannot reduce one to a conviction before the next is committed. That is, may these provisions be constitutionally valid when the only criterion separating the exercise of either reformatory punishment or vindictive punishment is the speed at which the offender commits a series of crimes?

It is apparent that the distinction between the punishment provided by [the presumptive sentencing provisions of the Alaska statutes] to each of these types of offenders, as illustrated by Rostopsoff's [sic] case, bears no reasonable relationship to the purpose of conforming the statute to the likelihood of recidivism. For this reason the presumptive sentencing provisions as applied to this defendant violate his right of equal protection under the test required by Art. 1, sec. 1, Constitution of Alaska.

. . . .

Therefore, the defendant may not be treated as a repeat felon for presumptive sentencing in either case .... In order to meet the Alaska constitutional guarantee of equal protection a felony conviction which is to be considered as a second or third conviction for the purpose of presumptive sentencing must be for the commission of a felony which was committed after the defendant has been sentenced on a prior felony or has been given a suspended imposition of sentence on a prior felony.

The state seeks to uphold the three-judge panel's decision insofar as it concluded that Rastopsoff was subject to presumptive sentencing as a second felony offender for his crimes of August 26, 1980, and as a third felony offender for his crimes of September 13, 1980. The state only disputes the panel's conclusion that Rastopsoff's equal protection rights would be violated by imposition of presumptive sentences. Rastopsoff, for his part, argues that the three-judge panel's interpretation of applicable presumptive sentencing statutes was incorrect; he maintains that a proper interpretation of these statutes would preclude him from being sentenced as a second or third felony offender unless the conviction for his first felony preceded commission of his second and third felonies. Rastopsoff alternatively argues that the three-judge panel's constitutional ruling must be affirmed. Because we agree with Rastopsoff that disposition of this case is governed by interpretation of the presumptive sentencing statutes, we do not reach the equal protection question decided by the three-judge panel.

The Alaska Revised Criminal Code, which went into effect a short time before commission of the crimes at issue in this case, creates four basic categories of felony offense: unclassified felonies, class A felonies, class B felonies, and class C felonies. Unclassified felonies encompass the most serious of felony offenses, including murder and kidnapping; violent crimes involving deadly force or the threat of a serious physical injury have generally been designated as class A felonies; less serious crimes of violence and serious property crimes were designated as class B felonies; and less serious offenses are class C felonies. *See* AS 11.81.250.

The basic sentencing structure governing these four categories of offenses is contained in AS 12.55.125. This section, as originally enacted,[1] set out permissible sentencing ranges for unclassified and class A, class B and class C felonies; with the exception of unclassified felonies and some categories of class A felonies, the section generally permits a broad range of discretion to sentencing judges in cases involving first offenders. However, for second and subsequent felony convictions, AS 12.55.125 adopts the more restrictive concept of presumptive sentencing, requiring offenders to be sentenced to a presumptive term unless specific aggravating or mitigating factors exist[2] or unless manifest injustice would result from imposition of a presumptive term.[3] Relevant portions of AS 12.55.125 provide:

(c) A defendant convicted of a class A felony may be sentenced to a definite term of imprisonment of not more than 20 years, and shall be sentenced to the following presumptive terms, subject to adjustment as provided in AS 12.55.155–12.55.175:

(1) If the offense is a first felony conviction, other than for manslaughter, and the defendant possessed or used a firearm or caused serious physical injury during the commission of the offense, six years;

(2) If the offense is a second felony conviction, 10 years;

(3) If the offense is a third felony conviction, 15 years.

(d) A defendant convicted of a class B felony may be sentenced to a definite term of imprisonment of not more than 10 years, and shall be sentenced to the following presumptive terms, subject to

1. Since its original enactment, AS 12.55.125 has been amended. However, recent amendments to AS 12.55.125 are not applicable in this case. In discussing sentencing provisions of the revised code, we will refer to the language applicable when Rastopsoff's offenses were committed.

2. *See* AS 12.55.155 (setting out specific aggravating and mitigating factors, as well as proce-

dures relating to adjustment of presumptive terms when aggravating and mitigating factors are found).

3. *See* AS 12.55.165 and 12.55.175 (providing for establishment of a three-judge sentencing panel and for referral of cases to the three-judge panel in cases where the sentencing judge determines that manifest injustice would result from imposition of a presumptive term).

adjustment as provided in AS 12.55.155–12.55.175:

(1) If the offense is a second felony conviction, four years;

(2) if the offense is a third felony conviction, six years.

(e) A defendant convicted of a class C felony may be sentenced to a definite term of imprisonment of not more than five years, and shall be sentenced to the following presumptive terms, subject to adjustment as provided in AS 12.55.155–12.55.175:

(1) If the offense is a second felony conviction, two years;

(2) if the offense is a third felony conviction, three years.

The terms "first felony conviction," "second felony conviction" and "third felony conviction," are defined in AS 12.55.-185(6), (7), and (8):

(6) "first felony conviction" means that the defendant has not been previously convicted of a felony;

(7) "second felony conviction" means that the defendant previously has been convicted of a felony;

(8) "third felony conviction" means that the defendant has been at least twice previously convicted of a felony;

These definitions do not specify whether the number of times a defendant has been "previously convicted of a felony" must be determined by counting prior convictions existing when the defendant committed the offense for which he is being sentenced or by counting all convictions entered prior to

sentencing. As both parties in this case readily acknowledge, the ambiguity of these definitions is virtually identical to the ambiguity in the statutory language that was at issue in *State v. Carlson,* 560 P.2d 26 (Alaska 1977).

In *Carlson,* the supreme court dealt with Alaska's former habitual criminal statute, AS 12.55.050, which established a system of progressively increasing penalties for persons convicted of a felony who had "previously been convicted" of one, two, or three felonies.[4] The issue in *Carlson* was whether two prior felony convictions that had been entered on the same day could be counted separately for the purpose of determining the number of times the defendant had previously been convicted, within the meaning of AS 12.55.050, when the defendant committed and was convicted of a subsequent crime. The state's position in *Carlson* was that the number of felony convictions on a defendant's record at the time of his conviction for a new offense should be the only determinative factor under the habitual offender statute. In response to this argument the court held:

[A] reading of the statute as a whole leads us to the conclusion that it is the accumulation of prior offenses, indicating the defendant has not reformed his behavior, rather than merely the gross number of offenses, which should be determinative of habitual criminal status.

Moreover, there are sound policy reasons for requiring each prior offense and conviction to fall in sequence in order to accumulate under AS 12.55.050. [The de-

---

4. Former AS 12.55.050, which was repealed by the Alaska Revised Criminal Code, provided:

*Increased punishment for persons convicted of more than one felony.* A person convicted of a felony in this state who has been previously convicted of a felony in this state or elsewhere, if the same crime elsewhere would constitute a felony under Alaska law, is punishable as follows:

(1) If the person is convicted of a felony which would be punishable by imprisonment for a term less than his natural life, and has *previously been convicted* of one felony, then he is punishable by imprisonment for not less than the minimum nor more than twice the

longest term prescribed for the felony of which that person is convicted.

(2) If the person *has previously been convicted* of two felonies, then he is punishable by imprisonment for not less than the minimum nor more than twice the longest term prescribed herein for a second conviction of felony.

(3) If the person *has previously been convicted* of three or more felonies, then on the fourth conviction he shall be adjudged an habitual criminal, and is punishable by imprisonment for not less than 20 years nor more than the remainder of his natural life. [Emphasis added.]

fendant] points outs [sic], and the state acknowledges, that when a convicted criminal has not taken advantage of the opportunity to reform and subsequently commits another crime, he may be considered a worse offender than one with no previous convictions. It is then reasonable to subject him to harsher sanctions. However, where, as in the case of [this defendant], two convictions occur on the same day, the opportunity for reformation is afforded to him only once, not twice.

. . . .

We believe that such a literal reading of AS 12.55.050 [as argued for by the state] would distort the underlying purpose of this statute and would be inconsistent with the principle that habitual criminal statutes are to be strictly construed in favor of the defendant.

*State v. Carlson,* 560 P.2d at 30 (citation omitted).

■ The decision in *Carlson* was announced well before the Alaska legislature decided to use identical language to define "first felony conviction," "second felony conviction," and "third felony conviction" in the new presumptive sentencing scheme. Under settled principles of statutory construction, when a legislature adopts specific statutory language that has previously been interpreted by the high court of the state in connection with other statutes involving a similar subject matter, the legislature is presumed to have intended to adopt the court's interpretation of that language, unless otherwise expressly indicated. *See Hafling v. Inlandboatmen's Union of Pacific,* 585 P.2d 870, 875 (Alaska 1978).[5]

The state nevertheless contends that AS 12.55.145, a provision that limits the circumstances under which prior convictions may be considered for the purposes of imposing a presumptive sentence, requires a departure from the rule of *Carlson.* The state emphasizes AS 12.55.145(a)(3) and the com-

mentary to this provision. AS 12.55.-145(a)(3) states:

> *Prior Convictions.* (a) For purposes of considering prior convictions in imposing sentence under this chapter
>
> . . . .
>
> (3) two or more convictions arising out of a single, continuous criminal episode during which there was no substantial change in the nature of the criminal objective are considered a single conviction. . . .

The commentary to this section states, in relevant part:

> Subsection (a)(3) provides that two or more convictions arising out of a "single, continuous criminal episode" are to be considered a single conviction unless there was a "substantial change in the nature of the criminal episode [sic, objective]." The phrase "single, continuous episode" is intended to limit the applicability of this provision to a single criminal event out of which a number of offenses could be charged. For example, the breaking and entering of a building with the intent to commit theft, which can be charged as burglary, and the taking of property in the building which can be charged as theft. In such an instance, convictions for both burglary and theft would be considered a single conviction under this section. However, the conviction of three burglaries involving three buildings in a single day, would not be considered part of a "single, continuous criminal episode [sic, objective]."
>
> Similarly, the phrase "substantial change in the nature of the criminal objective" is intended to limit the applicability of the provision to a single criminal objective. In the preceding example, the criminal objective is to obtain property and the breaking and entering is an incident of that objective. However, assume that the defendant takes a hostage to facilitate his flight, and then decides to

---

5. *See also Zerbe v. State,* 583 P.2d 845, 846 (Alaska 1978); *Nicholson v. Sorenson,* 517 P.2d 766, 770 & n. 9 (Alaska 1973); *City of Fair-* *banks v. Schaible,* 375 P.2d 201, 207 (Alaska 1962).

commit a sexual assault on the hostage. He is subsequently convicted of burglary, theft, kidnapping and sexual assault. In such a circumstance the defendant would have been convicted of three prior offenses for purposes of this section, burglary-theft, kidnapping and sexual assault. . . .

Commentary on the Alaska Revised Criminal Code, 2 Senate Journal Supp. No. 47 at 157–58 (1978).

It is the state's contention that AS 12.55.-145(a)(3) and its commentary establish the legislature's desire to have all criminal convictions that were entered against a defendant before his most recent conviction separately counted as prior convictions for purposes of presumptive sentencing; the only exception would be for multiple convictions arising out of a single, continuous criminal episode. The state argues, furthermore, that even in cases such as the present one, where two convictions are simultaneously entered for crimes that do not arise from a single criminal episode, the offense that was committed first in time must be counted as a prior conviction for the purpose of sentencing on the second offense.

While we agree with the state that subsection (a)(3) must be read to alter the rule adopted in *State v. Carlson,* we believe it is necessary to adopt a more restrictive interpretation of this provision than the one suggested by the state. Initially, we think that the plain language of AS 12.55.-145(a)(3), as well as that of AS 12.55.185(6), (7), and (8), requires rejection of the state's suggestion that, when convictions for multiple offenses are simultaneously entered, those committed earlier in time must be deemed prior convictions as to those committed at a later time. In this regard, the state has argued:

In cases such as this, where the defendant enters pleas at the same time to two offenses committed at different times, it is proper to treat the chronologically earlier offense as the first of the two (regardless of the actual order in which the pleas were received by the court at the hearing).

 The state cites no authority for this proposition, and indeed it seems that there is none. If the provisions of AS 12.-55.145(a)(3) and those of AS 12.55.185(6), (7), and (8) are clear and unambiguous as to anything, it is that the legislature chose to rely on the number of a defendant's prior convictions to determine the presumptive sentence he should receive. Yet, when simultaneous convictions are entered for offenses arising out of more than one criminal episode, one conviction cannot realistically be characterized as having been entered prior to the other. In the absence of express statutory authorization, we cannot conclude that one of several simultaneously entered convictions should be deemed a prior conviction simply because the conduct it involved occurred before the conduct involved in the other convictions.[6] Under the plain terms of the statutes, one conviction must precede the next before presumptive sentencing can apply.

Moreover, a close reading of AS 12.55.-145(a)(3) does not support the position that all felony convictions entered before entry of a defendant's most recent conviction must be counted as prior convictions for the purposes of presumptive sentencing. When read in context, subsection (a)(3) simply does not address the issue of whether a conviction must occur before commission or before conviction of a new offense in order to be counted as a prior conviction. Nor does the subsection indicate how multiple

---

**6.** For example, Arizona Revised Statutes § 13–604(H) is similar in terms to AS 12.55.145(a)(3), but the Arizona provision expressly authorizes one simultaneously entered conviction to be considered as a "prior conviction" for the purpose of imposing an enhanced sentence as to another. A.R.S. § 13–604(H) provides:

Convictions for two or more offenses not committed on the same occasion but consoli-

dated for trial purposes, may, at the discretion of the state, be counted as prior convictions for purposes of this section. Convictions for two or more offenses committed on the same occasion shall be counted as only one conviction for purposes of this section.

convictions that are simultaneously entered should be treated among themselves. Instead, it addresses only the problem of when multiple prior convictions must separately be counted in imposing sentence on a later offense.

This is clear from that portion of the commentary to subsection (a)(3) which states that a defendant convicted of three crimes arising from separate criminal episodes "would have been convicted of three *prior* offenses for purposes of this section . . . ." 2 Senate Journal Supp. No. 47 at 158 (1978) (emphasis added). Since a defendant could not be guilty of three *prior* offenses under these circumstances unless he was also convicted of a subsequent offense, the drafters of subsection (a)(3) evidently viewed it as setting out the correct procedure for counting multiple, simultaneously entered convictions for purposes of imposing sentence on a subsequent offense.

This conclusion is supported by a reading of AS 12.55.145(b) and (c). Subsection (b) requires the state to prove all prior convictions by serving authenticated copies of judgments on the defendant at least ten days before sentencing; subsection (c) requires that, if a defendant is going to deny any conviction shown by an authenticated copy of a prior judgment, he must do so at least five days before sentencing. There is nothing in AS 12.55.145 to indicate that the legislature ever contemplated any need to relax these notice requirements for cases involving simultaneous judgments of conviction or judgments of conviction entered within ten days of a sentencing date.[7]

■ We are persuaded after a close reading of AS 12.55.145 and its related commentary that subsection (a)(3) clearly expresses an intent by the legislature to require all felony convictions not arising from a single, continuous criminal episode to be separately counted for the purpose of imposing a presumptive sentence in the event of a subsequently committed crime, even if the convictions were simultaneously entered. To this extent, subsection (a)(3) departs from the rule adopted by the Alaska Supreme Court in *State v. Carlson,* since the rule in *Carlson* specifically required the conviction for one offense to be entered prior to commission of the next offense before both could be separately considered as prior convictions in any subsequent case.

We are convinced, however, that subsection (a)(3) provides no insight to the separate question of when a conviction must be entered in order to be deemed a prior conviction; that is, whether all felony convictions entered against a defendant before conviction for his current offense should be deemed prior convictions or whether only those convictions entered prior to the commission of the current offense should be counted. As to this separate question, subsection (a)(3) suffers from the same uncertainty as AS 12.55.125 and AS 12.55.185(6), (7) and (8). We find nothing in AS 12.55.-145(a)(3) that could be construed as an unambiguous statement that the legislature intended a wholesale abandonment of the *Carlson* rule.

The state urges, however, that the legislature's intent to abandon the *Carlson* rul-

---

7. The commentary to AS 12.55.125 is also relevant:

> If the defendant is being sentenced for a class A felony and has one prior felony conviction, a presumptive term of imprisonment of 10 years is specified. "Second felony conviction" is defined in § 12.55.185(b) [sic, AS 12.55.185(7) ]. Conviction of any prior felony, whether the same, higher or lower class than the felony for which the defendant is being sentenced, will make the defendant a repeat felon for presumptive sentencing. *Section 12.55.145, discussed infra, delineates the procedures for determining when prior felonies may be considered* for purposes of this section.

2 Senate Journal Supp. No. 47 at 154 (1978) (emphasis added). The relevant language states "when prior felonies may be considered," and not "when felonies may be considered prior felonies." This choice of wording in the commentary is significant, since it indicates that the drafters recognized that AS 12.-55.145 did not deal with the question of when a conviction could be deemed to be a prior conviction, but believed it to deal more specifically with the question of when prior convictions could be counted for presumptive sentencing purposes. Implicit in the commentary's focus on "prior convictions" is the assumption that a subsequent conviction exists.

ing may be inferred from the nature and purposes of the presumptive sentencing statutes. The state contends that, because presumptive sentences do not expose defendants to the drastic sentencing increases that typified habitual criminal statutes such as AS 12.55.050, the policies supporting the rule of *State v. Carlson* are largely inapplicable to presumptive sentencing. The state also maintains that the *Carlson* rule is inconsistent with the presumptive sentencing scheme's reliance on the "just deserts" theory of sentencing, whereby the primary goal of repeat offender sentencing is to ensure sentences uniformly reflecting the seriousness of the conduct for which offenders have been convicted.[8]

Rastopsoff responds to the state's arguments by asserting that the legislative history of the presumptive sentencing statutes supports the view that abandonment of the *Carlson* rule was not intended. He further alleges that there is no necessary inconsistency between the "just deserts" theory of sentencing and the *Carlson* rule. Finally, Rastopsoff argues that, assuming the legislature intended to adopt a standard entirely different from the rule contained in *State v. Carlson,* it has failed to make its intent sufficiently clear.

We recognize that the presumptive sentencing provisions of the revised criminal code mark a significant departure from traditional habitual criminal statutes. The state correctly notes that the potential consequences of presumptive sentencing to repeat offenders are far less draconic than the consequences prescribed in former AS 12.55.050. Under the presumptive sentencing statutes, repeat offenders can only be sentenced to prison terms within the limits of the same maximum term as that applicable to first offenders convicted of the same class of felony. Nevertheless, the policies that led the supreme court to its decision in *State v. Carlson* are not inapplicable to presumptive sentencing simply because of the more moderate terms of its penal provisions.

The Alaska Supreme Court has not hesitated to apply the *Carlson* rule to penal statutes which were less severe than the habitual criminal provisions of former AS 12.55.050. In *Gonzales v. State,* 582 P.2d 630, 636 (Alaska 1978), the court applied *Carlson's* reasoning to the sentencing provisions of former AS 17.10.200, which prescribed an increase in the maximum penalty for a second narcotics-related conviction from ten years to twenty years. Finding that the purpose of the increased penalty provisions was to subject persistent offenders to greater sanctions than those convicted only once, the court ruled in *Gonzales* that the second-offender provisions of AS 17.10.200 would apply only if conviction for the initial offense occurred prior to commission of the subsequent offense. *Id. See also Gonzales v. State,* 593 P.2d 257, 260–62 (Alaska 1979).

Similar conclusions have been reached by other courts, even as to statutes that did not provide for increased maximum penalties. For example, in *State v. Simmons,* 258 N.W.2d 908, 910 (Minn.1977), the court held that provisions of a statute increasing the minimum term for a second or subsequent felony could be applied only if the initial conviction was entered before commission of the subsequent offense.

Moreover, with the exception of the limited changes incorporated into AS 12.55.-145(a)(3), the legislative history of the presumptive sentencing statutes fails to sup-

---

**8.** Thus, AS 12.55.005, which lists factors to be considered in imposing a sentence under the revised code, states: "The court shall consider (1) the seriousness of the defendant's present offense in relation to other offenses ...." The commentary to AS 12.55.005 provides, in relevant part:

Paragraph (1) requires the court to consider the seriousness of the offense as compared with other offenses; this consideration reflects the "just deserts" theory of punishment, which holds that justice requires that a sentence imposed on a defendant should be based on the crime he committed rather than on speculation as to his future behavior. The commentary goes on to state: "In sentencing repeat felons, however, paragraph (1) will be of primary importance ...." 2 Senate Journal Supp. No. 47 at 148–49 (1978).

port the state's claim that abandonment of the *Carlson* rule was intended. To the contrary, as the state concedes, the Tentative Draft of the Alaska Criminal Code Revision, prepared by the Criminal Code Revision Subcommission and introduced in the 1978 Alaska legislature as House Bill 661, affirmatively indicated in its commentary that the Subcommission was well aware of the holding in *Carlson* and intended to adhere to the construction of "previously convicted" adopted in that decision. *See* Alaska Criminal Code Revision, Tentative Draft, Part 6 at 71–72, 79–80 (1978).

The Tentative Draft contained provisions substantially similar to AS 12.55.145(a)(3); it also included definitions of prior felony convictions which were essentially identical to those now contained in AS 12.55.185(6), (7) and (8) and to those previously contained in AS 12.55.050.[9] Although the Tentative Draft was subjected to considerable revision by the House Judiciary Committee— which produced C.S.H.B. 661 (April 1978)— and by the Senate Judiciary Committee— which produced S.C.S. C.S.H.B. 661 (June 1978)—the revisions focused almost exclusively on expanding the concept of presumptive sentencing to all classes of offenses and on reducing the range of discretion permitted to judges in imposing pre-sumptive terms. Apparently no discussion of the definition of prior convictions occurred in either the House or Senate Judiciary Committees or on the floor of either body. Thus, despite changes in other areas, the definitions of first, second and third felony convictions contained in AS 12.55.-185(6), (7), and (8), have remained essentially unchanged from those originally proposed in the Subcommission's Tentative Draft.

■ It is well settled that the report of a commission on a revision of statutory law provides evidence of legislative intent. 2A C. Sands, *Sutherland on Statutory Construction* § 48.09 at 208 (4th ed. 1973). In this case, forceful indicators that the legislature, in adopting presumptive sentencing, did not intend total abandonment of the *Carlson* rule may be found in: (1) the undisputed intent of the Criminal Code Revision Subcommission to adhere, in large measure, to the basic rule adopted in *Carlson*; (2) the lack of any significant change between the definition of prior convictions contained in the Tentative Draft and the definitions enacted in AS 12.55.185(6), (7), and (8); and (3) the lack of any discussion—in either house of the legislature—to indicate rejection of the Subcommission's interpretation of these definitions.

**9.** Thus, the Tentative Draft provided, in section 11.36.300:

> *Prior Convictions.* (a) For purposes of considering prior convictions in imposing sentence under this chapter,
>
> . . . .
>
> (3) Two or more convictions arising out of a single substantially contemporaneous course of criminal conduct are considered a single conviction . . . .

The Tentative Draft contained a version of presumptive sentencing that applied only to defendants convicted of second or subsequent felonies of the same class as or of a higher class than the felony for which the current sentence was to be imposed. Thus, for example, Tentative Draft section 11.36.270(b) provided:

> (b) A defendant convicted of a class A felony
>
> (1) may be sentenced to a definite term of imprisonment for *a first, class A felony* for not more than 15 years;
>
> (2) shall be sentenced to a definite term of imprisonment within a presumptive range of seven or more but less than 11 years *for a second, class A felony* subject to adjustment as provided in (e) and (f) of this section;
>
> (3) shall be sentenced to a definite term of imprisonment with a presumptive range of 11 or more but less than 18 years *for a third or subsequent, class A felony* subject to adjustment as provided in (e) and (f) of this section. [Emphasis added.]

Corresponding definitions were contained in Tentative Draft sections 11.36.330(4), (9) and (13), which provided:

> (4) "First, class A felony" means that the defendant *has not been previously convicted* of a class A felony;
>
> . . . .
>
> (9) "Second, class A felony" means that the defendant *has previously been convicted* of a class A felony;
>
> . . . .
>
> (13) "Third or subsequent class A felony" means that the defendant at least twice *has been previously convicted* of a class A felony; [Emphasis added].

The Criminal Code Revision Subcommission's commentary is also dispositive of the state's claim that the "just deserts" theory of sentencing is inconsistent with preservation of the rule adopted in *State v. Carlson.* Although the Tentative Draft was subjected to significant amendments in both the House and Senate prior to enactment, the commentary to the Tentative Draft demonstrates that the Subcommission viewed its proposal as espousing the "just deserts" theory of sentencing but did not consider "just deserts" to be antithetical to application of the *Carlson* rule:

> The Subcommission then considered how to treat prior offenses as those offenses would relate to automatic increases in sentences upon conviction. This issue arose in the context of what constituted a "prior" offense for the purpose of determining automatic heavier sentencing. . . . *The Subcommission concluded that if the offender had been convicted previously of the same or a more serious class of offense, he more likely would have been alerted to the seriousness of his conduct than he would have been had the prior conviction been for a less serious offense. Having failed to learn from the prior experience, it would be fair to conclude as did the Subcommission, that the person "justly deserved" no further breaks.* This decision was translated, in technical terms, into the definitions of first, class A felony offenders; second, class A felony offender, etc., contained in article 11 and discussed in the accompanying commentary.

Alaska Criminal Code Revision, Tentative Draft, Part 6, at 71–72 (1978) (emphasis added). As reflected in this passage, the Subcommission, although adhering to the "just deserts" model, concluded that there was a substantial interest in applying the enhanced sanctions of presumptive sentencing only to those offenders who had been alerted by a prior conviction, but who failed to respond by conforming their conduct to the law.

█ In summary, although the provisions of AS 12.55.145(a)(3) express a clear intent by the legislature to alter the *Carlson* test to a limited extent—by allowing separate consideration of all convictions entered before commission of the defendant's current offense, regardless of whether each prior offense was separated from the next by an intervening conviction—we find nothing in the express language of the sentencing provisions, in the legislative history of those provisions, or in the policies underlying the presumptive sentencing structure that would warrant a conclusion that the rule in *State v. Carlson* has been entirely abandoned. As we said in *Cassell v. State,* 645 P.2d 219, 222 (Alaska App.1982), "ambiguities in penal statutes must be narrowly read and construed strictly against the government." *See also Brookins v. State,* 600 P.2d 12, 17 (Alaska 1979); 3 C. Sands, *Sutherland on Statutory Construction* § 59.03 at 6–8 (4th ed. 1974). In considering an issue similar to the one presented in this case, the Minnesota Supreme Court has held:

> [I]n the area of minimum and extended sentences the legislature has an obligation to state its objectives as clearly as possible. When it cannot be said with certainty that the legislature intended to authorize the imposition of a minimum term or an extended term in a particular situation, the presumption must be that the legislature did not intend to do so.

*State v. Simmons,* 258 N.W.2d at 910.[10]

---

**10.** The state relies heavily upon *State v. Hannah,* 126 Ariz. 575, 617 P.2d 527 (Ariz.1980), to support its position. In *Hannah,* the Arizona Supreme Court interpreted statutory language providing for increased sentencing of defendants "previously convicted" of other felonies to require that all felony convictions entered before conviction of the current offense be counted as prior convictions. *Hannah* is readily distinguishable from the present case, however. In *Hannah,* the sentencing provisions under consideration had repealed preexisting legislation that expressly restricted enhanced sentencing to cases in which a prior conviction had been entered against the defendant before commission of the subsequent offense. Thus, the court in *Hannah* viewed the legislature's decision to use the language "previously convicted" as a significant change in preexisting law. Moreover, Arizona's statutory scheme contained express provisions allowing convictions of one or more offenses consolidated for disposition to be considered as prior convictions for purposes of sentencing on other offenses joined in the same charge. *Id.* at 528–29. *See* note 6, *supra.*

■ Here, the legislature has enacted a statute perpetuating the same ambiguous terminology that was construed in *State v. Carlson.* We are justified in departing from the holding in *Carlson* only to the extent that the legislature has expressly indicated an intent to alter the rule announced in that case. Because Rastopsoff's three separate criminal episodes occurred in close proximity and his convictions were entered after all of the offenses had been committed, he cannot be deemed to be a second felony offender under AS 12.55.125 and AS 12.55.185.[11] The sentencing court may give Rastopsoff a separate sentence for each offense arising from a separate criminal episode, and in so doing it may in its discretion choose to impose the sentences consecutively. AS 12.55.025(e). However, each offense must be treated as a first felony conviction for purposes of presumptive sentencing.

In light of our decision, it is unnecessary for us to reach the constitutional issue determined by the three-judge sentencing panel. We reverse the decision of the three-judge panel to the extent that it adopts an interpretation of the presumptive sentencing statutes that is inconsistent with our holding; however, we affirm the panel's decision to remand this case to Superior Court Judge Roy H. Madsen in order to allow sentencing of Rastopsoff as a first felony offender.

This case is REMANDED to the superior court for further proceedings consistent herewith.

11. In keeping with our interpretation of AS 12.55.145(a)(3), however, if Rastopsoff were to commit another felony, then upon conviction he would be subject to sentencing as a fourth felony offender. *See, Linn v. State,* 658 P.2d 150, (Alaska App., 1983). Our interpretation of AS 12.55.145(a)(3) is consistent with that advanced by Rastopsoff and no claim has been raised that this interpretation would be subject to the type of constitutional infirmity which was discussed by the three-judge sentencing panel in its decision of this case.